UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
JOHN CAULFIELD,                    )
                                   )
                  Plaintiff,       )
                                   )
v.                                 )          Civil Action No.
                                   )          15-10091-PBS
HUMAN RESOURCES DIVISION OF THE    )
COMMONWEALTH OF MASSACHUSETTS,     )
PAUL DIETL, in his individual      )
Capacity as Director of Human      )
Resources Division, BRUCE HOWARD,  )
in his individual capacity as      )
Director of Operations for Civil   )
Service for Human Resources        )
Division, CITY OF BOSTON, and      )
WILLIAM EVANS, in his official     )
Capacity as Boston Police          )
Commissioner,                      )
                                   )
                  Defendants.      )
_____)

**MEMORANDUM AND ORDER**

September 4, 2015

Saris, Chief Judge

**INTRODUCTION**

When Plaintiff John Caulfield was not hired for a position
with the Boston Police Academy, he filed this action pursuant to
42 U.S.C. § 1983, 42 U.S.C. § 2000e et seq. (Title VII), and
M.G.L. c. 151B, § 4, asserting unlawful gender discrimination.
He filed suit against (1) the Human Resources Division (HRD) of
the Commonwealth of Massachusetts; (2) two employees of HRD in
their individual capacities, Paul Dietl and Bruce Howard; (3)
the City of Boston (City); and (4) the Boston Police

1

Commissioner (Boston Police Department or BPD). He alleges that the BPD's gender-based hiring policy violates M.G.L. c. 151B, § 4 (Count I), Title VII (Count II), and the Equal Protection Clause, (Count III). He now seeks damages and injunctive relief (Count IV) (Docket No. 4). The defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (3). (Docket Nos. 14, 21).

After hearing and a review of the record, I **ALLOW** the motion to dismiss as to Caulfield's damages claims against all defendants on the ground that Caulfield lacks standing to seek monetary relief. The motion to dismiss is otherwise **DENIED**.

## FACTUAL BACKGROUND

The complaint alleges the following facts. The Human Resources Division of the Commonwealth of Massachusetts (HRD) administers civil service examinations for police officers, creates lists of candidates based on their scores, and issues hiring certifications to cities and towns from which they can appoint police officers. When the Boston Police Department (BPD) wants to hire new police officers, it sends a request to HRD specifying the number of desired candidates pursuant to M.G.L. c. 31 and HRD's Personnel Administrative Rules (PAR). The Personnel Administrator of HRD then sends a certification to the BPD containing the names of eligible candidates. Candidates appear in descending order based on their performance on the

civil service examination. Under PAR.02 and PAR.08(4), the BPD must consider all candidates listed in order of test rank, although it may bypass a more highly ranked candidate by providing written justification to the Personnel Administrator. PAR.08(6) authorizes the issuance of selective certifications based on certain qualifications, including gender.[1]

In February and March 2013, the BPD submitted a request to HRD for a main certification from which it sought to hire forty-five officers of either gender. BPD also requested a selective gender certification from which it sought to hire ten female officers. Defendant Howard received and approved these requests, and HRD issued both certifications. Plaintiff John Caulfield, who sought appointment as a Boston police officer, passed the civil service examination and appeared on the main certification. In the end, Caulfield was not hired.

Caulfield alleges that, had HRD not issued a selective gender certification, BPD would have considered or appointed

---

[1] Under M.G.L. c. 31, § 21,

The [personnel] administrator [of the human resources division] may limit eligibility for any examination for an original appointment to either male or female persons if the appointing authority requests such limitation in its requisition. . . . [T]he administrator may limit such eligibility to either male or female persons if the duties and responsibilities of such position require special physical or medical standards or require custody or care of a person of a particular sex.

more officers from the 55th rank and would likely have sent him
to the academy. Additionally, he alleges that HRD has a long-
standing practice of approving selective gender certifications
regardless of the justification for the request, and that BPD
consistently fails to show a compelling government interest in
hiring female officers. As a result, Caulfield avers, HRD has
granted every BPD certification request since 2010, even though
BPD had enough female officers to meet its stated criteria.

## DISCUSSION

I.  Standing

The defendants argue that Caulfield does not have standing
to seek either damages or injunctive relief, and urge dismissal
of the case for lack of subject matter jurisdiction under Fed.
R. Civ. P. 12(b)(1). In addition to submitting the selective and
main certifications, the defendants submitted an affidavit that
contains the following facts relevant to the jurisdictional
issue.[2] Based on his exam score, Caulfield was ranked 55th along
with 137 other candidates. The selective certification list
contained 115 female candidates. All ten female officers hired
from the selective certification were ranked 54th or higher on
the main certification. All of the female candidates that

---

[2] Neither party has thus far sought discovery on facts relating
to standing. Caulfield did not challenge the accuracy of the
selective gender certification and main certification submitted
to the Court.

appeared on the selective certification also appeared on the main certification, ranked in order of their score. Absent the selective certification, any higher-ranked female would have been considered for employment in advance of Caulfield. Of the forty-five officers hired from the main certification, seventeen (one female and sixteen males) were ranked 55th. No one ranked lower than 55th was hired.

"A Rule 12(b)(1) motion is sometimes transformed into a Rule 56 motion where jurisdictional issues cannot be separated from the merits of the case." Gonzalez v. United States 284 F.3d 281, 287 (1st Cir. 2002). However, "[t]he court, without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations." Dynamic Images Techs, Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000). Accordingly, "the formality of converting the motion to dismiss to one for summary judgment need not be observed," Kolancian v. Snowden, 532 F. Supp. 2d 260, 262 (D. Mass. 2008), and courts have the authority to resolve the issue of standing on the basis of extrinsic evidence. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (where plaintiff raises factual challenge to subject matter jurisdiction, "the court enjoys broad authority to order discovery, consider extrinsic evidence,

and hold evidentiary hearings in order to determine its own jurisdiction").

A plaintiff seeking to invoke a federal court's jurisdiction must show that he has "suffered or is threatened by injury in fact to a cognizable interest." Donahue v. City of Boston, 304 F.3d 110, 115 (1st Cir. 2002) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The asserted injury must be "(a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. The plaintiff must then show that the defendant's conduct caused the asserted injury and that it is "likely – rather than merely speculative – that the injury will be redressed by a favorable decision." Donahue, 304 F.3d at 115.

However, the First Circuit has warned that courts "cannot apply identical standing analyses to claims for damages and claims for prospective relief." Id. at 118. On the one hand, a plaintiff seeking damages must demonstrate that "he would have received the benefit for which he now seeks compensation" absent the challenged discriminatory policy. Id. at 118-19 (plaintiff not hired by BPD lacked standing to seek damages where he was "too far down the list to be even remotely considered for hiring"); cf. Texas v. Lesage, 528 U.S. 18, 21 (1999) (per curiam) (no cognizable injury under § 1983 where government

would have made same hiring decision absent challenged race-based policy).

A plaintiff requesting forward-looking relief, on the other hand, need not meet this bar, which can be sky-high in the hiring context. For the following reasons and after a review of the entire record, I conclude that Caulfield lacks standing to seek damages, but is entitled to proceed on his claim for injunctive relief.

**A. Damages**

Caulfield contends that, absent the gender certification, BPD might have bypassed some of the more highly ranked candidates on the main certification, considered candidates in the 55th tier, and ultimately hired him for the position. But Caulfield does not stand on firm ground.

As Caulfield concedes, the ten women hired from the selective certification were all ranked more highly than he was.[3] Under PAR.08(4), the BPD would have been obliged to consider them for appointment before considering Caulfield, regardless of how many officers BPD would have hired absent a special certification. The record does not make clear how many candidates the BPD would have sought to hire had they not requested a selective gender certification. Assuming the BPD

---

[3] The BPD also hired one female from the main certification who, like Caulfield, was ranked 55th.

would have hired forty-five officers, the addition of the more highly-ranked women onto the main certification list would have made it less likely that Caulfield could have been reached for consideration. If the BPD decided to hire fifty-five officers altogether, the additional ten spots would likely have been filled by the ten higher-ranked women. While the BPD might have chosen to bypass some of these women and evaluate others lower ranked on the certification, that possibility is "rank" speculation.

In short, while Caulfield's imagined scenario is possible, his "contention is little more than an allegation that an injury *might* have occurred if a series of events transpired in a certain way." Pugsley v. Police Dep't of Boston, ___ N.E.3d ___, 2015 WL 4577566, at *3 (July 31, 2015) (slip op.) (plaintiff who challenged BPD's use of selective gender certification lacked standing because he "failed to articulate an injury that is anything but hypothetical").

Such speculation is insufficient to establish Caulfield's standing to seek damages. As the First Circuit explicitly stated, Caulfield must show that he "*would* have received the benefit for which he now seeks compensation," not merely that he *could* have. Donahue, 304 F.3d at 119; see also Cotter v. City of Boston, 323 F.3d 160, 166-67 (1st Cir. 2003) (holding that plaintiff lacked standing to request compensation for BPD's

8

challenged conduct of denying him a promotion under its race-
conscious employment policy).

Accordingly, Caulfield's claim for compensatory damages is
**DISMISSED** as to all counts.

### B. Injunctive relief

The parties also dispute the closer question of standing to
seek prospective relief. To satisfy the injury component of
standing, a plaintiff must show that (1) he is "able and ready"
to compete for the employment position in the future, and (2)
the employer's allegedly discriminatory practice will prevent
him from competing on an "equal footing" at that point. Cotter,
303 F.3d at 167; see also DeLeo v. City of Boston, 2004 WL
5740819 at *12 (D. Mass. Nov. 23 2004) ("[A] plaintiff may have
standing to pursue a claim for injunctive relief if he . . . is
likely to be exposed to unequal treatment") (quotation omitted);
Northeastern Fla. Chapter of Assoc. Gen. Contractors v.
Jacksonville, 508 U.S. 656, 666 (1993) (plaintiffs had standing
to challenge minority preference in city contract awards where
they were "able and ready" to bid on contracts but could not
because of minority set-aside).

In light of this standard, Caulfield has demonstrated that
he is likely to be denied the opportunity to compete on equal
footing in the BPD's hiring process on account of his gender,
because the BPD has requested the selective gender certification

multiple times since 2010 and HRD has always granted these requests. See Donahue, 304 F.3d at 119-20. Even if he is more highly rated than the women on any future selective certification, Caulfield will be ineligible for any vacancies reserved for them simply because he is male. This is enough to show that Caulfield is likely to receive unequal treatment in his consideration for hiring by the BPD.

Moreover, Caulfield took the civil service examination again this year and has already reapplied for appointment to the Academy. Caulfield is thus "able and ready" to apply for the sought-after benefit – gender-neutral consideration for officer hiring by the BPD – but likely cannot do so on an equal basis due to the BPD's continued use of selective certifications.

II.  Rule 12(b)(6) Motion

A. Standard of Review

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. Katz v. Pershing, LLC, 672 F.2d 64, 70-71 (1st Cir. 2012). Additionally, the court must construe the complaint liberally. Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015). "Dismissal is only appropriate if the complaint fails to allege a 'plausible entitlement to relief.'" Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, the complaint may be dismissed "[i]f the factual allegations . . . are too meager, vague, or conclusory to remove the possibility of relief from the realm of conjecture." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012).

**B. M.G.L. c. 151B (Count I)**

Caulfield alleges that the defendants violated M.G.L. c. 151B, § 4, by affording a preference to female candidates without supplying a bona fide occupational qualification. Dietl and Howard argue that the c. 151B claims against them must be dismissed because Caulfield failed to exhaust his administrative remedies with the Massachusetts Commission Against Discrimination (MCAD).

Even if Caulfield had standing, this Count is barred as to Dietl and Howard because Caulfield concedes that he did not name those parties in his complaint with the MCAD. A party seeking to bring a discrimination claim under c. 151B must first file a charge of discrimination with the MCAD. Chatman v. Gentle Dental Ctr. of Waltham, 973 F. Supp. 228, 233 (D. Mass. 1997). "The failure to name a party in a charge filed with the MCAD may

preclude the plaintiff from later maintaining a Chapter 151B claim in court against that party." Id. However, Chapter 151B claims against a defendant not named in the MCAD charge will be sustained if the complaint alleges that 1) the individual had notice of the charge against it and 2) an opportunity to conciliate before the MCAD, even if his conduct fell within the scope of the MCAD investigation. Wright v. CompUSA, Inc., 183 F. Supp. 2d 308, 309 (D. Mass 2001) (dismissing c. 151B claims against defendants not named in MCAD charge even where their "conduct was put at issue by the administrative charge," since defendants lacked notice or opportunity to conciliate). Nothing in Caulfield's complaint suggests that Dietl or Howard had an opportunity to conciliate the claims against them as individuals before the MCAD.

### C. Title VII (Count II)

The defendants have moved to dismiss Caulfield's Title VII claims on the ground that he failed to exhaust his administrative remedies. The "unexcused failure to exhaust administrative remedies effectively bars the courthouse door" for a Title VII discrimination claim. Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). "Administrative remedies [can]not be considered to [be] exhausted . . . until the EEOC issue[s] . . . a right-to-sue letter." Francesci v. U.S. Dep't of Veteran Affairs, 514 F.3d 81, 85 (1st Cir. 2008); see also Maillet v. TD

Bank U.S. Holding Co., 981 F. Supp. 2d 97, 99 (D. Mass. 2013)
(plaintiff must receive EEOC right-to-sue letter to fulfill
Title VII exhaustion).

At the hearing, Caulfield conceded that he had not
exhausted his administrative remedies with the EEOC because he
had not yet received a right-to-sue letter. Caulfield has sought
leave to amend his complaint, but faces a bump in the road
because the EEOC has denied the right-to-sue request on
timeliness grounds. This will inevitably, as day follows night,
trigger another round of briefing. I will resolve this issue
once it has been fully briefed.

**D. § 1983 (Count III)**[4]

The BPD moves to dismiss the § 1983 claim for injunctive
relief against the gender-based policy of seeking a selective
certification. Unjustified government acts that discriminate on
the basis of gender are unconstitutional, see, e.g., United

---

[4] Since Caulfield lacks standing to seek damages, the motion to
dismiss his § 1983 damages claims against Dietl and Howard in
their individual capacities must be **ALLOWED**. This would remain
so even if Caulfield had standing to seek damages, since
qualified immunity would then bar his § 1983 claims against
Dietl and Howard. Reasonable officers would not have understood
their use of a selective gender certification to violate the
Equal Protection Clause. See Joyce v. Town of Dennis, 705 F.
Supp. 2d 74, 77 (D. Mass. 2010) (directors of town golf course
were immune to suit after prohibiting female golfer from
competing in men's members-only tournament). However, Caulfield
may still seek injunctive relief against those employees in
their official capacities.

States v. Virginia, 518 U.S. 515, 532-33 (1996), and gender-based classifications are reviewed under intermediate scrutiny. Mass. v. U.S. Dep't of Health and Human Servs., 682 F.3d 1, 9 (1st Cir. 2012); see also Virginia, 518 U.S. at 533. Gender-based classifications violate the Equal Protection Clause unless they (1) serve important governmental objectives and (2) are substantially related to the achievement of those objectives. Id.; Laro v. New Hampshire, 259 F.3d 1, 10 (1st Cir. 2001).

The BPD's primary argument for dismissal is that the selective gender certification is constitutional because the City has an operational need for female officers. It relies on DeLeo, which involved another challenge to the BPD's hiring policies, including its use of selective gender certifications. 2004 WL 5740819, at *12 (D. Mass. Nov. 23, 2004). The Court concluded that such certifications met both prongs of the intermediate scrutiny standard, citing the City's "ongoing operational need to hire female police officers for investigations, the handling of female suspects and female prisoners, and interaction with female victims of sexual assault and rape." Id. For this reason, the defendants contend that the City's operational need for female officers remains strong enough to satisfy intermediate scrutiny.

This argument makes too much of Deleo, which was resolved on a full summary judgment record detailing the BPD's

"operational need" for female officers in 2004. Caulfield, on the other hand, has had no opportunity to conduct discovery and offer evidence regarding whether any such need for female officers remains over one decade later. In Pugsley, the BPD argued that its use of the selective gender certification was justified "by the statistical disparity between the number of female Boston police officers and the number of female suspects and female victims that come into contact with law enforcement." 2015 WL 5740819 at *5. Similarly, at the hearing in this case, the BPD asserted that the increasing percentage of females involved in criminal activity, as well as the increasing number of female crime victims, necessitated hiring a greater number of female officers. But the plaintiff has not yet been permitted to probe those statistics or the justification from the BPD as to its need for gender certifications. To address Caulfield's position on the merits at this point would be premature.

Moreover, the viability of BPD's selective certification policy is currently being tested at the MCAD and in the Massachusetts courts. On August 17, 2014, the MCAD found probable cause that the BPD had discriminated against a male officer candidate by using a December 2010 selective gender certification. Toomey v. BPD, No. 10BEM03305. And in Pugsley v. Police Dep't of Boston, the Supreme Judicial Court recently addressed a challenge to selective certifications under M.G.L.

15

c. 151B, suggesting in dicta that "the use of statistical disparities, without more, will generally be insufficient to support a BFOQ." ___ N.E.3d ___, 2015 WL 4577566, at *3 (July 31, 2015) (slip op.). Although the SJC dismissed Pugsley's claim for lack of standing, it left it to the MCAD "to particularize the showing necessary for engaging in such discriminatory hiring through the BFOQ process." Id. These ongoing developments in the case law further support the resolution of Caulfield's case on a better record.

At the motion to dismiss stage, particularly in light of Pugsley and Toomey, Caulfield's allegation that the BPD "had a standing policy that was itself unconstitutional" is "sufficient to anchor" a municipal claim. Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011).

### ORDER

The motions to dismiss Caulfield's claims for damages are **ALLOWED** (Docket Nos. 14, 21). The motion to dismiss the City as a defendant is **ALLOWED** (Docket No. 21).[5] The motion to dismiss is otherwise **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge

---

[5] The plaintiff conceded that his claims against the City are duplicative of his claims against the Commissioner. He further concedes that Count III must be dismissed as to HRD due to sovereign immunity.